**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case no. 23bk12504 |
| | ) | |
| TUESDAY A. SMITH, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Hononorable Deborah L. Thorne |
| | ) | |
| ALICE J. HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | Adv.no. 23ap00379 |
| v. | ) | |
| | ) | |
| TUESDAY A. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff is Alice J. Haynes, the mother of the Defendant, Tuesday A. Smith.  In 2023, a Cook County judge found that Defendant had breached her fiduciary duty to Plaintiff and entered judgment against her for $192,186.71.  Shortly after judgment, Defendant filed a chapter 13 petition and Plaintiff  filed an adversary proceeding to bar Defendant's discharge of the judgment under 11 U.S.C. § 523(a)(4).  This matter is now before the court on Plaintiff's Motion for Summary Judgment.  Because the doctrine of collateral estoppel applies, the court grants Plaintiff's motion and Plaintiff's claim is nondischargeable.

**I.      Background**

Plaintiff is 73 and has three surviving adult children (Pl.'s Statement of Uncontested Facts in Supp. of Her Mot. for Summ. J. ("Uncontested Facts") ¶ 8, Dkt. No. 19. )  In 2005, Plaintiff underwent a liver and kidney transplant and was hospitalized from November 2005 through March 2006. (*Id.* ¶ 25.)  While hospitalized, Plaintiff signed a Trust at Northwestern Memorial Hospital with her as trustee. (*Id.* ¶ 20.)  She also signed an Illinois Short Form Durable

Power of Attorney for Property and named Defendant "as her agent and giving Tuesday broad powers to deal with her property." (*Id.* ¶ 23.)  Plaintiff's condominium was transferred to the Trust.  (*Id.* ¶ 24.)

After she was released from the hospital in 2006, Plaintiff came to live with the Defendant in her home in Plainfield, Illinois. (*Id.* ¶ 26.)  Plaintiff lived with Defendant from the time she was discharged until 2016, when she was moved to an assisted living facility. (*Id.* ¶ 27.) Defendant paid Plaintiff's bills after transferring the appropriate amount of funds from Plaintiff's bank account to Defendant's. (Def.'s Resp. to Pl.'s Statement of Uncontested Facts in Supp. of Her Mot. for Summ. J. ("Def.'s Resp. Uncontested Facts") ¶ 31, Dkt. No. 28.)  While Plaintiff lived with Defendant, Defendant leased Plaintiff's condominium to others and in 2015, arranged for Plaintiff's condominium to be sold (Uncontested Facts ¶ 28; May 2, 2023, Cir. Ct. Order ("Cir. Ct. Order") at 2, Dkt. No. 20, Ex. B.)  Although Defendant was never named as trustee for the Trust, she signed the sale's contract regarding the sale of the condominium in her own name as "Seller." (Uncontested Facts ¶ 37.)  Defendant signed the various documents as "Attorney-in-fact" for Alice J. Haynes, Trustee to transfer title to the purchaser. (*Id.* ¶ 40.)   At the closing, Defendant received two checks in the amounts of $248,584.23 and $30,000.00. (*Id.* ¶ 42.)  Both checks were made payable to the Trust. (*Id.* ¶ 42) The checks were both deposited in the Trust account. (*Id.* ¶ 43.)  Later, a cashier's check in the amount of $192,186.71 was signed by both the Plaintiff and Defendant and deposited in the Defendant's personal account. (*Id.* ¶ 45.)  The funds deposited into Defendant's account were used to renovate Defendant's home. (*Id.* ¶ 46.)

Defendant continued to help Plaintiff with paying her bills while she was living in the assisted living facility. (*Id.* ¶ 49.)  At the time of the Cook County trial, no funds remained in the Trust. (*Id.* ¶ 50.)

**A. State Court Proceeding and Judgment**

In April 2023, the Circuit Court of Cook County held a trial to determine whether Defendant had breached her fiduciary duty to Plaintiff.  The Circuit Court tried two counts, one a request for an accounting of all moneys received and disbursed by Defendant in the administration of the Trust and a second for the removal of Trustee for Breach of Fiduciary Duties. (Cir. Ct. Order at 1.)  After a three-day trial, the Circuit Court entered judgment for Plaintiff finding that Defendant breached her duty of care as a fiduciary, breached her duty of loyalty by self-dealing and failed to make an honest disclosure of amounts and disposition of the funds and assets entrusted to her by Plaintiff. (Uncontested Facts ¶¶ 15-18)

Specifically, the Circuit Court found the following:

- Plaintiff "established a fiduciary relationship by clear and convincing evidence – as a matter fact, if not as a matter of law.  The circumstances all point to a relationship of trust and confidence."

- Plaintiff's "age, health and mental condition combined to put Alice [the Plaintiff] in a position where she could not take care of her own financial affairs."

- Defendant, "with her finance degree and experience in business, was the obvious candidate to take over."

- Plaintiff trusted Defendant to "handle her finances."

- Defendant "acted as a fiduciary" to Plaintiff.

- Defendant "understood the Trust and handled Trust assets to a much greater extent than Plaintiff did.

- "That a Power of Attorney was one of the tools that allowed Defendant to accomplish control over" Plaintiff's finances.

- Plaintiff "placed her trust and confidence in [Defendant] along with her money."

- Defendant "needed to be able to explain how she dealt with the assets entrusted to her.  She has not done that."

- Defendant "breached her duty of care as fiduciary . . . for failing to adequately account for rent proceeds and expenses from [Plaintiff's] Condo."

- Defendant "breached her duty of loyalty by self-dealing—causing the Trust to pay [Defendant] $192,186.81 from the proceeds of the sale of [Plaintiff's] Condo."

- Defendant "has not shown (1) that she made a frank disclosure to [Plaintiff] of where the money was going and how it was to be used; (2) that [Defendant] paid adequate consideration for the funds; or (3) that [Defendant] has competent and independent advice."

(*Id.* ¶ 18; Cir. Ct. Order.)

Shortly after the Circuit Court judgment was entered, Defendant filed a Notice of Appeal to the Appellate Court. (Uncontested Facts ¶ 58.)  In March 2024, Defendant withdrew the appeal, and the Appellate Court entered an order allowing the motion to withdraw and ordering the case dismissed. (*Id.* ¶¶ 58 – 62.)[1]  Defendant has consistently plead in this case that the Circuit Court findings were not supported by the state court record, yet she withdrew the appeal.

**B. Adversary Proceeding**

On September 20, 2023, Defendant filed a voluntary chapter 13 petition.  On a timely basis, Plaintiff filed this adversary complaint.  Plaintiff's complaint asks for a determination that

---

[1] This court previously entered an order modifying the automatic stay to allow the parties to proceed with the appeal. ( Dkt. No. 12.)

the Circuit Court judgment is nondischargeable under 11 U.S.C. § 523(a)(4). (Compl., Dkt. No. 1.) The allegations in the complaint mirror those in the state court proceeding: Plaintiff alleges that there was a fiduciary relationship between Defendant and Plaintiff and that Defendant committed defalcation by using Plaintiff's money and property for her own benefit. (*Id.* ¶ 56-74.)

Now pending before the court is Plaintiff's motion for summary judgment.  Plaintiff asserts that, under the doctrine of collateral estoppel, the state court's findings preclude Defendant from contesting nondischargeability in this action (Pl.'s Mot. For Summ. J., Dkt. No. 18.)

## II.  Jurisdiction and Venue

The court has jurisdiction pursuant to 28 U.S.C. § 1334, and venue is proper under 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## III.  Legal Standard

### A.  Summary Judgment

Federal Rule of Civil Procedure 56(a)—made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056—provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016).  A party opposing summary judgment, however, "must set forth specific facts showing that there is a genuine issue for trial" and cannot "rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248 (citation and quotation marks

omitted); *see also Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 463 (Bankr. N.D. Ill. 2011) ("[F]acts to which the opposing party offers a response that is neither a direct admission nor a denial are admitted." (citation omitted)).

### B. Collateral Estoppel

Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Dexia Credit Loc. v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010). It is "well established" that collateral estoppel applies in proceedings to determine dischargeability. *Phlamm v. Mukenschnabl (In re Mukenschnabl)*, 643 B.R. 218, 240 (Bankr. N.D. Ill. 2022) (collecting cases). "If a court of competent jurisdiction has previously entered judgment against [a] debtor, collateral estoppel may bar the debtor from re-litigating the underlying facts in the bankruptcy court." *Id.* (quoting *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994) (internal quotation marks omitted)).

Because Plaintiff asserts that an Illinois judgment precludes relitigation of this issue, Illinois law applies. *See id.* at 241. Plaintiff must show that (1) the state court case presented an identical issue, (2) the state court case ended in a final judgment on the merits, and (3) the party against whom estoppel is asserted was a party in the state court case. *Id.* Defendant does not seem to contest that the final two elements are met. Only the first element, whether Plaintiff's § 523(a)(4) claim presents an identical issue to the state court proceeding, is disputed.[2]

---

[2] Defendant repeatedly pleads that the Circuit Court order misapplied the testimony, yet she failed to pursue her appeal in the Illinois Appellate Court. The Circuit Court judgment is a final order, and this court is precluded from relitigating factual or legal issues resolved in an earlier case. *S. Cal.Gas Co. v. Collier, Bankr. No. 08 B 22708, Adv. No. 08 A 01008*, 2010 WL 1241778, at *2 (Bankr. N.D. Ill. March 23, 2010).

6

### IV.     Analysis

The Bankruptcy Code precludes discharge for debts obtained through "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4).  A creditor seeking a determination of nondischargeability must prove that (1) "the debtor acted as a fiduciary to the creditor at the time the debt was created," and (2) "the debt was caused by fraud or defalcation." *In re Jahrling*, 816 F.3d 921, 925 (7th Cir. 2016).  The court discusses each of these elements—and their identicality to the state court findings—in turn.

### A.  Fiduciary Relationship

"Not all persons treated as fiduciaries under state law are considered to 'act in a fiduciary capacity' for purposes of federal bankruptcy law.  The existence of a fiduciary relationship under section 523(a)(4) is a matter of federal law." *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767 (7th Cir. 2011) (citing *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000)).  The Seventh Circuit recognizes a fiduciary relationship when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994).  This ascendancy exists when, for example, "one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals." *Id.*

The state court's findings show that Defendant and Plaintiff had a fiduciary relationship at the time the debt was created.  Defendant has a master's degree in finance and strategy from Notre Dame and has held a series of jobs in finance. (Cir. Ct. Ord. at 2.)  When Plaintiff was hospitalized after having a liver and kidney transplant in 2005, she signed a Trust Agreement at Northwestern Memorial Hospital in the presence of Defendant, and several attorneys. (*Id.*)

Under the terms of the Trust, Plaintiff was named as original trustee and Defendant was named as successor trustee, to act in the event Plaintiff resigns by written notice. (*Id.*) Plaintiff never signed a written notice of resignation. (*Id.*) The same day the Trust was signed, Plaintiff "also signed an Illinois Short Form Durable Power of Attorney for Property, naming [Defendant] as her agent and giving [Defendant] broad powers to deal with her property." (*Id.*) Because of her "poor health" and "memory issues beginning in 2004," Plaintiff trusted Defendant to be her guide and stated that she didn't have anyone else. (*Id.* at 2-3.) After the Trust was created, Plaintiff's condominium was transferred into the Trust. (*Id.* at 2.) After Plaintiff was released from the hospital, she came to live with Defendant and during that time, Defendant leased out Plaintiff's condominium and collected the rent. (*Id.*) She did not provide an accounting of the income or expenses associated with the condo. (*Id.*) In 2015, Defendant sold Plaintiff's condo. (*Id.* at 3.) She signed the sale contract in her own name as "Seller" and retained an attorney to handle the sale. (*Id.*) Although the attorney handling the closing gave Defendant documents for Plaintiff to sign, Defendant signed various closing documents herself and signed the Closing Statement and the HUD-1 Settlement Statement as "Attorney-in-fact" for Plaintiff. (*Id.*) Defendant attended the closing and received checks for $248,584.23 and $30,000 both made out to the Trust. (*Id.*) The checks were deposited in a Trust account. (*Id.*)

Seven months after the closing, Defendant went to the bank with Plaintiff and arranged for a cashier's check for $192,186.71 to be issued. (*Id.*) Both Defendant and Plaintiff signed the back of the check and Defendant deposited it in her personal bank account. (*Id.*) At the Circuit Court trial, Defendant testified that the funds were a gift to her from Plaintiff. (*Id.*) The Circuit Court noted that Plaintiff's testimony

8

showed she does have memory issues. She identified her signature on some documents, including the Trust, the Power of Attorney, and the Trustee's Deed transferring [her] Condo in 2015.  But she testified, 'I don't even remember having a Trust.' She did not remember selling her Condo in 2015, but said she knew it was sold at some time.  She expected [Defendant] to use the money from the sale of [Plaintiff]'s Condo for [Plaintiff]'s benefit.

(*Id.*)

Shortly after the condo was sold, Defendant arranged for Plaintiff to be moved to an assisted living facility which was paid with government benefits. (*Id.*)  Plaintiff stayed in the assisted living facility for about two years and then moved in with one of her sons. (*Id.*)

The Circuit Court found that a fiduciary duty as a matter of fact existed as a result of the "special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." (*Id.* at 4) (quoting *Gonzalzles v. Am. Express Credit Corp.,* 315 Ill. App. 3d 199, 210 (1st Dist. 2000)). The Circuit Court went on to explain that the party asserting the existence of a fiduciary duty in fact "has the burden of establishing such by clear and convincing evidence." (*Id.*) (quoting *Gonzalzles,* 315 Ill. at 210). The relevant factors include "the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant party' and placed trust and confidence in it." *Id.* (quoting *Gonzalzles,* 315 Ill. at 210).

On similar facts, courts in this district have found that a fiduciary relationship existed. *See Harris v. Vincze (In re Vincze)*, No. 17bk09688, No. 17ap00359, 2018 WL 4037288, at *4 (Bankr. N.D. Ill. Aug. 21, 2018) (finding a fiduciary relationship where principal had dementia and defendant had power of attorney and controlled her finances); *Wians v. Wians (In re Wians)*, 523 B.R. 124, 133 (Bankr. N.D. Ill. 2014) (same).

9

Collectively, these findings and admissions convince the court that—at the time Defendant's debt arose—there was a substantial difference in knowledge and power between Defendant and Plaintiff. Theirs was not a relationship at arm's length between equals; Defendant's position of ascendancy over the Plaintiff created a fiduciary relationship. Based on the state court's factual findings, there is no genuine dispute that this element is met.

## B. Defalcation

Defalcation is "a failure to account for money or property that has been entrusted to another." *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr. N.D. Ill. 1994). The Supreme Court has explained that defalcation does not require actual knowledge; rather, courts "consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013). The risk must be of "such a nature and degree that, considering the nature and purpose of [his] conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in [his] situation." *Id.* Put in relative terms, the plaintiff must show "something more than mere negligence or mistake, but less than fraud," *Colemichael Invs., L.L.C. v. Burke (In re Burke)*, 405 B.R. 626, 649 (Bankr. N.D. Ill. 2009), *aff'd,* 436 B.R. 53 (N.D. Ill. 2010) and can do so using circumstantial evidence. *Jahrling*, 816 F.3d at 926.

For purposes of collateral estoppel, the prior court need not actually use the phrase "defalcation" or find that the defendant acted with specific intent to harm. *Mukenschnabl*, 643 B.R. at 242 ("[T]he court in a prior action need not use the specific words or phrases found in the elements of a statutory exception to discharge in order for collateral estoppel to apply."). Collateral estoppel applies when the prior court's "findings of fact, when viewed in the

10

aggregate, 'independently comprise elements of a [subsequent] dischargeability claim.'" *Id.*

(quoting *French Kezelis & Kominiarek, P.C. v. Carlson*, No. 99 C 6020, 2000 WL 226706, at *4

(N.D. Ill. Feb. 22, 2000)).

The state court's findings of fact certainly amount to defalcation.  Defendant was trusted

with Plaintiff's money and property, and the state court found that she failed to keep appropriate

records or provide an adequate accounting, and she used Plaintiff's income and assets for her

benefit. During the hearing referenced in the written order, the state court made factual findings

that:

1.  Defendant's accounting was inadequate.  She failed to adequately provide an

    accounting to Plaintiff or to the Circuit Court. (Cir. Ct. Ord. at 5).

2.  Defendant rented out Plaintiff's condo and failed to account for the funds that were

    generated.  (*Id.* at 2).

3.  Defendant benefitted from her own actions as power of attorney, specifically

    benefitting from the sale of Plaintiff's condo. (*Id.* at 3).

4.  As a result of Defendant's use of the funds to renovate her own home, there are no

    funds remaining in the Trust. (*Id.*)

These findings of fact, when viewed in the aggregate, show that—at minimum—

Defendant consciously disregarded the risk that her actions would violate the fiduciary duty she

owed to Plaintiff. Based on the state court's factual findings and Defendant's own admissions

during the state court hearing, there is no genuine dispute that Defendant committed defalcation.

### V.      Conclusion

The state court's factual findings show that Defendant's debt to Plaintiff was obtained

through defalcation while acting in a fiduciary capacity. Because there is no genuine dispute of

material fact as to the elements of section 523(a)(4), Plaintiff's Motion for Summary Judgment is

granted, and Plaintiff's claim is nondischargeable.

ENTER:

Dated:  August 20, 2024

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge